**STATE of Tennessee, Appellee,**

v.

**Ralph BILBREY, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 3, 1991.

No Permission to Appeal Applied for to the Supreme Court.

---

72

David L. Raybin, Phillip Robinson, Nashville, for appellant.

Charles W. Burson, Atty. Gen., John M. Roberts, Asst. Atty. Gen., Nashville, J. Kenneth Atkins, Dist. Atty. Gen., Daniel W. Cook, James W. Kirby, Asst. Dist. Attys. Gen., Charlotte, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Ralph L. Bilbrey, was convicted upon his nolo contendere pleas in the Cheatham County Circuit Court of five counts of fraudulent breach of trust. Judgment was entered on July 7, 1989, by which he was sentenced as a Range I, standard offender to consecutive, maximum sentences of six years on each count for a total sentence of thirty years. On July 24, 1989, the defendant filed a Motion to Reduce Sentence, Tenn.R.Crim.P. 35, seeking to have the sentences run concurrently. A hearing on the motion was held in December, 1989, and the trial court's order denying his request was entered on January 24, 1990.

The defendant seeks to appeal as of right from his convictions and the sentences, recognizing that his notice of appeal, filed on January 16, 1990, was timely for the rule 35 order, but was not within thirty days of the July 7, 1989 judgment. In this appeal, the defendant presents the following issues:

(1) Whether the notice of appeal was timely filed or should be waived pursuant to T.R.A.P. 4(a).

(2) Whether the five convictions should have merged into one conviction since the criminal conduct constituted a continuing design, scheme or plan.

(3) Whether the defendant should have been sentenced under the Criminal Sentencing Reform Act of 1989 instead of under prior law.

(4) Whether the trial court erroneously imposed maximum and consecutive sentences as to all convictions.

## FACTS

The defendant was indicted on twenty-two counts of fraudulent breach of trust of monies due Old South Trucking Company. The record is far from clear as to the exact actions by the defendant. The defendant was a dispatcher for Old South. Old South would wire money to truckers who were on the road and, upon their return, the advances would be deducted from the money due them from Old South. The defendant owned some of the trucks operated in this fashion. As dispatcher, the defendant was in charge of making the advances and keeping records of the advances in the truckers' files. The record reflects that he, apparently, would remove the records from the files and keep, for himself, the monies supposedly deducted from the truckers' settlements, including his own trucks, without accounting for them to Old South. The funds proven to be taken totaled $279,-

166.86. Each count related to a full month during the period from January 1, 1985, through October 31, 1986.

At the plea hearing, the defendant acknowledged that there was a factual basis for a jury to convict him and it was shown that he admitted civil liability for the full amount, having signed a promissory note. The nolo contendere plea was based upon the defendant's contention that he did not have criminal intent and did not do the specific things the state alleged, but that it was in his best interest to enter such a plea. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Pursuant to agreement with the state, the defendant entered pleas to counts one (January 1–31, 1985), six (June 1–30, 1985), eleven (November 1–30, 1985), sixteen (April 1–30, 1986) and twenty-two (October 1–31, 1986) and the remaining seventeen counts were dismissed.

## STATUS OF APPEAL

The defendant contends that his notice of appeal was timely filed. The significant dates relative to the appeal are as follows:

July 7, 1989—Judgment and sentence entered.

July 24, 1989—Motion to Reduce Sentence filed.

January 16, 1990—Notice of Appeal from plea, sentence and denial of motion filed.

January 24, 1990—Order denying Motion to Reduce sentence entered.

An appeal as of right is initiated by the filing of a notice of appeal, T.R.A.P. 3(e), within thirty days of the entry of the judgment being appealed. T.R.A.P. 4(a). However, if a timely motion (1) for judgment of acquittal, (2) for new trial, (3) for arrest of judgment, or (4) for a suspended sentence is filed, the thirty days run from the entry of the order determining such motion or motions. T.R.A.P. 4(c). The Advisory Committee Comment to this rule notes that it would be undesirable to proceed with an appeal while the trial court was still considering "a motion the granting of which would vacate or alter the judgment appealed from, and which might affect either the availability of or the decision whether to seek appellate review."

The defendant asserts that his Rule 35 motion to reduce sentence was the equivalent of a motion to rehear. In this regard, he relies upon federal cases to assert that motions to rehear a final determination, if filed within the original time for appeal, toll the appeal time until after the motion is determined. Indeed, the United States Supreme Court has specifically held that a timely petition to rehear tolled the time for the filing of a notice of appeal, regardless of the federal rules not including such an abeyance procedure. *United States v. Dieter,* 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976); *United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). In *Healy,* dealing with the government's appeal of the district court's dismissal of an indictment, the Supreme Court held that the appeal time ran from the denial of the government's petition to rehear. It stated that such a petition was "a well-established procedural rule for criminal, as well as civil, litigation." 84 S.Ct. at 556. It cited its previous practice of accepting appeals whose notices of appeal were timely only in relation to the rehearing requests. It reasoned that, in many cases, giving the parties an opportunity to seek correction of perceived errors in the trial court would save time and effort.

> It would be senseless for this Court to pass on an issue while a motion for rehearing is pending below, and no significant saving of time would be achieved by altering the ordinary rule to the extent of compelling a notice of appeal to be filed while the petition for rehearing is under consideration.

84 S.Ct. at 556–557.

Obviously, the appellate rules do not specifically allow a Tenn.R.Crim.P. 35 motion to suspend the running of the appeal time from the entry of the judgment. T.R.A.P. 4(c) mentions the motions which toll the time and such specificity would indicate that all other motions are excluded. *See Southern v. Beeler,* 183 Tenn. 272, 195 S.W.2d 857, 866 (1946) (as a rule of construction, the mention of one subject in

a statute means the exclusion of unmentioned subjects). Further, Tenn.R.Crim.P. 35(b) provides for an appeal to lie from the trial court's action on the Rule 35 motion and the time for filing the motion is not tolled by an appeal having already been processed. *State v. Biggs*, 769 S.W.2d 506 (Tenn.Crim.App.1988). In *Biggs*, this Court held that the filing of a notice of appeal from the trial court's judgment did not divest the trial court of jurisdiction to entertain a Rule 35 motion. Conversely, the filing of the Rule 35 motion does not toll the time within which to appeal from the judgment.

■ Cumbersome as it may be, the rules of criminal and appellate procedure clearly provide that the action of a trial court on a Rule 35 motion and the appeal therefrom are separate and distinct from those concerning the original judgment. Obviously, it would make sense, on appeal, to merge the issue regarding the original sentence imposed with the issue regarding a denial of a motion to reduce that original sentence. However, this Court must abide by the appellate rules promulgated by the Tennessee Supreme Court and approved by the legislature, *see Barger v. Brock*, 535 S.W.2d 337, 342 (Tenn.1976), which are deemed laws of this state. *Tennessee Department of Human Services v. Vaughn*, 595 S.W.2d 62, 63 (Tenn.1980). Therefore, this Court cannot hold that the time for filing a notice of appeal was tolled by the filing of the Rule 35 motion within thirty days of the entry of the judgment.

■ A defendant who fails to appeal from the entry of a judgment of conviction, including the sentence, but who elects to appeal after a Rule 35 motion to reduce sentence has been decided, runs the risk of having failed to preserve any issue regarding the validity of the judgment, being left with only those properly raised in the Rule 35 motion. However, in this case, both parties urge this Court to waive the filing of a timely notice of appeal in the interest of justice. T.R.A.P. 4(a). In *State v. Burrow*, 769 S.W.2d 510 (Tenn.Crim.App.1989), this Court waived the notice of appeal in the interest of justice when the state's un-

timely appeal was caused by its failure to file a notice of appeal until after the trial court had ruled on its motion to reconsider the dismissal of an indictment. Given the posture of the present appeal, this Court, as in *Burrow*, exercises its authority and waives the timely filing of the notice.

## MERGER OF CONVICTIONS

The defendant contends that his five convictions were for only one offense and that, thus, four of the convictions should be vacated as merged with the remaining one. He relies upon *Nelson v. State*, 208 Tenn. 179, 344 S.W.2d 540 (1960) in which our Supreme Court held that if successive takings result from a single, continuing intent or from a continuing larcenous design, scheme or plan, then the takings constitute a single larceny, regardless of the extent of time over which the takings occurred. The defendant reasons that the indictment and the plea hearing clearly show that the defendant's alleged conduct between January 1, 1985, and October 31, 1986, was part of a continuous larcenous scheme allowing for only one conviction.

■ However, pursuant to plea agreement, the defendant entered nolo contendere pleas to five counts with the remaining counts being dismissed. These pleas were voluntarily, knowingly and understandingly made with the advice of counsel. A nolo contendere plea has the same effect as a guilty plea, absent some statute or rule to the contrary. *See State v. Teague*, 680 S.W.2d 785, 789 (Tenn.1984). A guilty plea constitutes a waiver of all nonjurisdictional and procedural defects or constitutional infirmities. *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn.Crim.App.1984); *Shepard v. Henderson*, 1 Tenn.Cr.App. 694, 449 S.W.2d 726 (1969). For the purposes of an appeal, the nolo contendere plea has the same effect as a guilty plea. In fact, upon the entry of a nolo contendere plea, any issue which might be dispositive of the case must be explicitly reserved with the consent of the state and the trial court. T.R.A.P. 3(b). Otherwise, it is waived. *See* T.R.A.P. 3(b); Tenn.R.Crim.P. 37(b)(2)(iii).

At the plea hearing, the defendant admitted that the facts existed to support his conviction on the five counts. Further, he did not seek to set aside his pleas. *See* Tenn.R.Crim.P. 32(f). He cannot, now, seek to better his plea bargain. Therefore, the defendant cannot prevail on this issue which has been waived.

### APPLICATION OF 1989 SENTENCING ACT

The defendant contends that he was *entitled to be sentenced under the 1989 Sentencing Act since his Rule 35 motion was pending on November 1, 1989, the Act's effective date.* He points to the remedial nature of the Act and the fact that any sentence imposed after its effective date was to be pursuant to it. T.C.A. § 40–35–117(b). Obviously, under the defendant's theory, he presumes that the Rule 35 motion left his case's status as pending in the trial court with his sentencing not complete until the motion was determined.

Several circumstances belie the defendant's claim. The sentence imposed on July 7, 1989, was subject to appeal as of right as in other criminal cases and at the same time the appeal, if any, of the conviction was to be taken. T.R.A.P. 3(b); T.C.A. § 40–35–402(a) (Supp.1988) [repealed]. Thus, it carried a finality for appeal purposes and was not interlocutory in nature. Also, Tenn.R.Crim.P. 35(b) specifically states that the modification is to the sentence imposed and it "can only be as to any sentence the court could have originally imposed." Thus, the action of the trial court on the Rule 35 motion relates back to the date of sentencing, in this case, July 7, 1989, so as to require any modification to comply with the law existing as of that date. As this panel of this Court has recently held, the denial of a Rule 35 motion "was not the sentencing, but amounted to a simple reaffirmation of the sentence previously imposed." *State v. Warner Bolton*, No. 01–C–01–9008–CC–00187, Maury Co., slip op. at 6, 1991 WL 44991 (Tenn.Crim. App., Nashville, April 4, 1991). The defendant was not entitled to be sentenced under the 1989 Act.

### MAXIMUM AND CONSECUTIVE SENTENCES

The defendant quarrels with the maximum and consecutive nature of his sentences. Since the sentences were imposed under the 1982 Sentencing Act, as amended, appellate review is *de novo* without a presumption of correctness. T.C.A. § 40–35–402(d) (Supp.1988) [repealed]. Such a review requires this Court to consider (a) the evidence received at the trial and sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing, (e) the nature and characteristics of the offenses, (f) any mitigating or enhancing factors, (g) the defendant's statement, if any, and (h) the defendant's potential for rehabilitation or treatment. T.C.A. §§ 40–35–103 and –210; *State v. Moss*, 727 S.W.2d 229 (Tenn.1986). The issue of consecutive sentencing requires review under the standards developed in *Gray v. State*, 538 S.W.2d 391 (Tenn.1976).

The defendant was a forty-eight-year-old army veteran with two adult children. He was employed as a truck driver and reported earning up to one thousand dollars per week. At the sentencing hearing, James Rex Raines, the owner of Old South Trucking Company, testified about the serious problems that the theft caused his business and him personally. The probation officer testified that he determined that the defendant had defrauded another couple out of some money in a truck and trailer transaction in 1985 and that the defendant had obtained some money, through forgery, from his deceased wife's estate in 1987. His prior record reflected three 1978 marijuana conspiracy and felony possession convictions in Tennessee, Kentucky and Florida, which, apparently, arose from the same transaction.

The defendant did not testify, but he put on witnesses to show that Old South's bookkeeping was lax. His employer testified that he was dependable and reliable in his work. The defendant's statement to the probation officer attributed the defi-

ciencies to bookkeeping errors and denied criminal activity.

Apparently, the defendant turned assets over to the victim for sale toward any restitution. It appears that, ultimately, some eighty-two thousand dollars was deemed repaid. However there was a question as to whether or not this constituted a good faith effort to recover the proceeds of the crime, as a mitigating factor, since there was proof that the defendant had substantial gross income in past years, such as, three hundred seventy thousand dollars in 1985 and seven hundred thirty-four thousand dollars in 1986. The record does not reflect to what extent these figures would be reduced for the substantial operating costs related to trucking.

At the hearing, the trial court set the maximum of six years for each offense, stating that enhancement was based upon the particularly great amount of property damage to the victim, T.C.A. § 40–35–111(6) (1982), and the violation of the position of trust in which the victim had placed him. Also, the trial court held that the defendant's potential for rehabilitation was poor because of his past history. *See* T.C.A. §§ 40–35–103(5) and –111(1). It noted that any mitigating factors did not call for a reduced sentence.

This Court notes that the violation of trust is inherent in the crime of fraudulent breach of trust and was not a statutory enhancement factor under the 1982 Act. Its use as a sentence enhancer under these circumstances is highly suspect and this Court will not rely upon it in this case. Obviously, the record reflects sufficient previous history of criminal convictions and criminal behavior as to justify a sentence above the minimum. Likewise, as to the circumstances of the offenses, the total theft nearly destroyed the victim's business. In response, the defendant asserts that he is entitled to the application of mitigating factors in his sentences since his conduct did not cause or threaten serious bodily injury and he made attempts at compensating the victim. *See* T.C.A. § 40–35–110(1), (2) and (11). However, as stated in *State v. Moss, supra*, "[t]he weight afford-ed mitigating or enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved." 727 S.W.2d at 238. In this case, the lack of contemplation of physical injury pales in comparison to the amount of the property loss. Further, the repayment relied upon by the defendant would be more significant if the record did not reflect a historical pattern of fraudulent conduct. In this regard, this Court agrees with the trial court's imposition of a six year sentence for each conviction.

■■■ At the sentencing hearing the trial court did not specify any different reasons for requiring the service of the sentences to be consecutive. In the judgment entered on July 7, 1989, it stated that the consecutive sentences were based upon the following:

(1) Defendant was in a position of utmost trust.

(2) The amount of money taken was great.

(3) It was a well planned scheme continuing over a period of almost two years.

(4) The sentence is the least severe to achieve the purposes contemplated by the trial court.

(5) Rehabilitation is unlikely.

Most of the trial court's findings have little relationship to the criteria in *Gray v. State, supra*, and consecutive sentences totaling thirty years are not justified. However, the record does reflect an extensive scheme for almost two years by which substantial sums of money were taken by the defendant. This would meet the criterion in *Gray* for a multiple offender, i.e., "the crimes for which he has been convicted indicate criminal activity so extensive and continuing for such a period of time as to warrant consecutive sentencing." 538 S.W.2d at 393.

At the trial level, the state did not seek consecutive sentencing for all of the convictions. The state's brief, on appeal, did not address the issue of consecutive sentences. The defendant asks this Court to compare his case to that in *State v. Candler*, 728 S.W.2d 756 (Tenn.Crim.App.1986) in which

Candler, with eight convictions, received an aggregate minimum sentence of eleven years for a five month long bank fraud scheme involving a total of three million dollars. The defendant asserts that the comparison shows that he received unequal treatment not related to the purposes of the 1982 Sentencing Act. T.C.A. § 40–35–103(3) (Supp.1988). Substantive differences exist, though, in that *Candler* did not involve either the length of or the history of criminal activity which this case involves. Thus, the mere fact that *Candler* involved substantially greater ultimate harm does not mean that the defendant is entitled to less of a sentence than that which was imposed in *Candler.* Each case rests upon its own particular circumstances and the 1982 Sentencing Act is intended to be applied on a case-by-case basis. *State v. Moss, supra,* 727 S.W.2d at 238. In order to protect the public from further criminal conduct by the defendant, a multiple offender, some consecutive sentencing is in order.

The six year sentences imposed in counts one, six and eleven are to be served concurrently to each other. The six year sentences in counts sixteen and twenty-two are to be served concurrently with each other, but consecutively to the sentences imposed in counts one, six and eleven. The case is remanded to the trial court for entry of a judgment consistent with this opinion.

SCOTT and JONES, JJ., concur.